UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CURLEY SMITH | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | CIVIL NO. L-08-1911 |
| | * | |
| MARYLAND TRANSPORTATION | * | |
| AUTHORITY | * | |
|     Defendant | * | |

*******

MEMORANDUM

This is an employment discrimination case. Plaintiff Curley Smith is a 61 year old Native American. Defendant Maryland Transportation Authority ("MDTA") is a state agency responsible for managing the state's transportation toll facilities. Smith, who was employed by the MDTA, alleges that it discriminated against him on the basis of his race and age, and that he was retaliated against for filing a discrimination charge and for taking leave under the Family and Medical Leave Act ("FMLA").

Now pending is a Motion for Summary Judgment by the MDTA. Docket No. 48. No hearing is necessary as the motions have been fully briefed. Local Rule 105.6 (D. Md. 2008). For the reasons stated herein, the Court will, by separate Order of even date, GRANT the MDTA's Motion. The Clerk is DIRECTED to CLOSE the case.

**I.      Background**

The facts are fully set forth in the parties' briefs. The following material facts are not in dispute. Smith began working for the MDTA on February 5, 2003, when he was hired as a Facilities Maintenance Technician I ("FMT I") at the Fort McHenry Tunnel facility. In this position, Smith performed maintenance tasks including operating heavy equipment, cleaning buildings, and repairing vehicles.

In October 2005, Smith applied for medical leave so that he could be treated for and recover from colon cancer. The MDTA granted Smith's request for leave from October 18, 2005 through January 9, 2006. On February 16, 2006, the MDTA approved Smith's request for extended leave without pay for January 10, 2006 through June 30, 2006.

Smith returned to work in June 2006. He was assigned to the Baltimore Harbor Tunnel's "Sign Shop," where he could perform tasks that were less physically demanding than the tasks usually performed by an FMT. Shortly after Smith's return, David Roehmer, the MDTA administrator for the Fort McHenry Tunnel and Baltimore Harbor Tunnel facilities, met with Smith to discuss his employment status. The MDTA had promoted Smith to FMT II in 2004, and Smith had subsequently submitted an application for the position of FMT III. Roehmer informed Smith, however, that based on the June 2005 medical examination, Smith could not return to duty. Therefore, Roehmer offered Smith the option of applying for disability, retiring, or resigning from his position. Roehmer reiterated these options in a letter dated June 20, 2006. Roehmer Aff. Ex. 6. In that letter, Roehmer also offered Smith the opportunity to return to work on modified duty pending the outcome of any disability retirement application. Id. ¶ 3.

The MDTA then scheduled Smith for a fitness-for-duty medical examination. After conducting two evaluations, Concentra Medical Centers informed the MDTA that Smith could return to full duty. Smith returned to full duty, and the MDTA re-assigned him to the Sign Shop.

After returning to work, Smith inquired about the status of his application for the FMT III position. On August 30, 2006, Roehmer prepared a request to have Smith reclassified from an FMT II to an FMT III, with pay retroactive to August 2005. A week later, Roehmer realized that he had discarded Smith's application for the FMT III position during the time that he believed Smith would be applying for disability retirement. Therefore, Roehmer told Smith to resubmit

his application.  Smith never resubmitted the application.  Ultimately, the MDTA reclassified six employees in 2006 from FMT II to FMT III.  One of those employees was a white female, and one was an African-American male.  On November 3, 2006, Smith filed a complaint of discrimination with the Maryland Commission on Human Relations ("MCHR"), alleging failure to promote based upon national origin, race, and age.[1]

In January 2007, Smith became ill with the flu.  According to MDTA policy, "If an employee is going to be absent for more than one day, the employee must report the absence daily until an expected <u>date of return</u> is established."  Def. Ex. 1, Nesbitt Aff. ¶ 13, Ex. 13 (emphasis added).  Therefore, from January 9th to 12th and January 16th to 19th, Smith obtained medical leave by calling his supervisor, Kenny Kiel, each morning to report and explain his absence.  Smith claims that on the 19th Kiel told him that he need not call in again to report his continued absence.  Pl.'s Ex. D, Smith Dep. 96.  Specifically, Smith testified that Kiel told him that Kiel "would take care of it."  <u>Id.</u>  Kiel, however, testified that Smith simply stopped calling after the 19th.  Kiel Dep. 30.

On January 29th, Roehmer sent Smith a letter advising him to contact the MDTA and explain his absence.  Roehmer Aff. Ex. 9.  Smith signed for the letter on January 31st.  He did not contact anyone at the MDTA as directed.  He claims, however, that his wife spoke to Roehmer's assistant at some time after the 31st.  The MDTA has not contradicted this assertion, meaning that for purposes of summary judgment the call to Roehmer's assistant is established.  Smith does not, however, claim that Roehmer's assistant excused him from any of the MDTA's reporting requirements.  Moreover, Smith never provided any documentation to the MDTA to

---

[1] This was not the first complaint Smith filed.  In April 2004, he filed a complaint with the Maryland Department of Transportation ("MDOT") Office of Fair Practices, alleging that the MDTA failed to promote him because of his race.  Smith was promoted to FMT II in December 2004.  Nevertheless, he filed a second complaint alleging failure to promote in March 2005.

3

explain his absence, he never established an expected date of return, and, other than his wife's alleged call, he never contacted anyone at the MDTA after the 31st.

The Code of Maryland Regulations ("COMAR") provides that a Transportation Service employee "who does not report to work or provide notice to the supervisor of the reason for an absence from work for 5 consecutive workdays is considered to have resigned effective as of the last day of work." Md. Code Regs. 11.02.02.04B (2009). Not having heard from Smith, on February 5th, Roehmer advised Smith by letter that his unauthorized absences were deemed an automatic resignation effective January 19th. Roehmer Aff. Ex. 11. On February 6th, Roehmer notified the MDTA's Human Resources department that Smith had automatically resigned. The Human Resources department then removed Smith from the MDTA's payroll. On August 29th, Smith's position was filled by a white male.

Smith timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC found his complaint to be unsubstantiated and issued a right to sue letter. This suit followed.

**II.     Analysis**

Smith alleges that the MDTA violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, by discriminating and retaliating against him. Smith also alleges that the MDTA violated his rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621. Finally, Smith alleges that the MDTA violated FMLA by terminating him after he took approved leave.

The MDTA has moved for summary judgment on all of these claims. Smith does not oppose dismissal of the ADEA claim. D.'s Opp. 2, n. 1. Accordingly, the Court must determine whether summary judgment is appropriate on Smith's Title VII and FMLA claims.

A.   **Legal Standard**

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

B.   **Title VII Claims**

1.   **Discrimination Claim**

Smith alleges that the MDTA violated Title VII of the Civil Rights Act of 1964 by unlawfully discriminating against him because of his race.[2] Title VII makes it an "unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Smith has not come forward with any direct evidence of

---

[2] In his Second Amended Complaint, Smith does not allege precisely what adverse employment action violated his rights. See Pl.'s Second Am. Comp. ¶¶ 29-30 ("Defendant's actions, noted above violated the antidiscrimination and retaliation provisions of Title VII as amended. Defendant willfully discriminated against Plaintiff on account of his race, national origin and prior EEO activity, in violation of Title VII as amended."). In his Opposition, however, Smith states that the MDTA "discriminated against him on the basis of race by terminating his employment." D.'s Opp. 11. Accordingly, the Court will not consider whether Smith can meet his burden on a failure to promote theory.

discrimination.  To make a prima facie case of discrimination under the McDonnell Douglas burden-shifting scheme, Smith must demonstrate: (1) that he is a member of a protected class; (2) that he was discharged; (3) that he was performing the job satisfactorily, meeting the employer's legitimate expectations; and (4) that the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.  Williams v. Cereberonics, Inc., 871 F.2d 452, 455 (4th Cir. 1989).  Smith's discrimination claims fail because he cannot establish the fourth prong of this test.

The chronology of this case is relatively straightforward.  The MDTA has a clear policy, of which Smith was aware, requiring him to call his supervisor each day to report and explain his absence.  Smith failed to comply with this policy from the 22nd onward, except arguably on the single day that Smith's wife called and spoke to Roehmer's assistant.

Smith claims that he stopped calling because Kiel orally exempted him from the reporting requirement on the 19th.  As mentioned, at the summary judgment stage Kiel's statement is taken as an established fact.  In the Court's view, Smith's reliance on Kiel's assurance was unreasonable in light of Roehmer's letter of January 29th, which clearly directed Smith to call and explain his absence.  Despite the letter, Smith never called to say how long he would be absent or to establish a return date.  MDTA regulations clearly specify that an employee who fails to report to work for five consecutive days will be deemed to have automatically resigned unless the employee has called his supervisor each day to report and explain his absence.  See Md. Code Regs. 11.02.02.04B.  It is understandable, therefore, that Roehmer notified Human Resources of Smith's resignation on the 6th.

Under the fourth prong of the McDonnell Douglas framework, Smith must establish by a preponderance of the evidence that his discharge occurred under circumstances that raise a

reasonable inference of unlawful discrimination.  See McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Smith has failed to satisfy this requirement.  His discharge may have resulted from a misunderstanding between himself and Kiel as to his reporting requirements.  If so, Smith's discharge may be regrettable.  The anti-discrimination laws do not, however, protect an employee from the consequences of misunderstandings or even arbitrary actions by an employer. In this case, Smith must present evidence from which a fair-minded jury could infer that Roehmer was actuated by racial animus.  See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) ("In a disparate treatment case, liability depends on whether the protected trait . . . actually motivated the employer's decision.").  Smith has come forward with no such evidence.

Smith seeks to meet his burden by claiming that the MDTA operates on a "good old boy system." P.'s Opp. 3.  Smith claims that less qualified white males received favorable work assignments and were promoted ahead of minority applicants.  He alleges that his supervisor, Bob Alter, made a statement "to the effect that no man of color" would ever be in a position of authority at the MDTA and that he was promised but never received a promotion to FMT III. Smith also claims that the MDTA refused to administer the FMT III test to him.  Finally, Smith alleges that Roehmer tried to force him to resign or retire.

Smith provides no evidence of these violations save for his own conclusory allegations. At the summary judgment stage, conclusory allegations unsupported by specific evidence are insufficient to establish a genuine issue of fact.  See Fed. R. Civ. P. 56(e).  Moreover, the adverse action that Smith has raised in the instant suit is unlawful termination.  He has specifically disavowed any claim that Roehmer failed to promote him to FMT III on account of his race.  In a proper case, a discriminatory failure to promote, while not asserted as an independent claim, may

provide evidence of discrimination. Here, Smith has completely failed to provide any specific evidence to support his contention that discrimination lay behind Roehmer's failure to promote him to FMT III. He has provided no information concerning the qualifications of the six individuals who were reclassified from FMT II to FMT III and no facts to suggest that his qualifications were superior to theirs.

It is true that Roehmer discarded Smith's application for a promotion to FMT III. There is an entirely innocent explanation for this action. Roehmer recommended Smith for reclassification. While Smith was absent and during a time that it appeared Smith would never come back, Roehmer discarded Smith's application as inapplicable. When Smith did return to duty, Roehmer prepared a request to have Smith promoted to FMT III. He also explained to Smith that he had discarded Smith's application, Roehmer explained why he discarded the application, and he directed Smith to submit another application. Expecting that Smith would reapply, Roehmer prepared a request to have Smith reclassified from an FMT II to an FMT III, with pay retroactive to August 2005. Smith never reapplied, however. Absent an application, he could not be considered for the promotion.

Accordingly, Smith cannot show that his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Further, because Smith has not made out a prima facie case, he cannot proceed on a pretext theory. See McDonnell Douglass, 411 U.S. at 802.

### 2. Retaliation Claim

Smith's Title VII retaliation claim also fails. Title VII prohibits an employer from retaliating against an employee for participating in a Title VII proceeding or opposing an employer's discriminatory practices. 42 U.S.C. § 2000e-3(a). Although Smith has not come

forward with any direct evidence of retaliation, courts also use the McDonell Douglas framework to evaluate Title VII retaliation claims. To establish a prima facie case of retaliation, Smith must show: (1) that he engaged in a protected activity; (2) that the employer took an adverse employment action against the employee; and (3) that a causal connection existed between the activity and the adverse action. Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997). Smith claims that he engaged in a protected activity by filing a complaint with the MCHR on November 3, 2006. Because Roehmer believed that Smith had automatically resigned, however, Smith cannot demonstrate any causal nexus between his exercise of a protected right and his termination.

    **C.**     **FMLA Claim**

The Family and Medical Leave Act, 29 U.S.C. §§ 2611-2654, requires that affected employers grant eligible employees up to a total of twelve weeks of leave during any twelve month period because of a serious health condition. See 29 U.S.C. § 2612(a)(1)(D). FMLA claims arising under a retaliation theory are "analogous to those derived under Title VII." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006). Therefore, they are also analyzed under the McDonell Douglas burden-shifting framework.

Smith's FMLA retaliation claim fails because he cannot establish a causal connection between his taking of medical leave and his termination. Smith did not apply for medical leave in January 2007. Therefore, his claim rests on the medical leave he took beginning in October 2005. The passage of time tends to negate any inference of discrimination. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (per curiam) (citing cases). Here, more than sixteen months passed between the time Smith received medical leave and his termination in 2007. After Smith exhausted his medical leave, he received an additional six months leave of

absence. Under these circumstances, Smith has not established a prima face case of retaliation. Cf. Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004) (observing that where employer took an adverse action nine to ten months after it learned of the plaintiff's protected activity, "it is a very close question" whether plaintiff had established a prima facie case of discrimination).

**III.  Conclusion**

    For the reasons stated herein, the Court will, by separate Order of even date, GRANT the MDTA's Motion. The Clerk is DIRECTED to CLOSE the case.

                                                                  /s/
                                                        Benson Everett Legg
                                                        United States District Judge